**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| Dwayne Seals, | |
| Plaintiff, | Case No: 20-11272 |
| v. | |
| Wayne County, Wayne County Employees' Retirement System, and Robert Grden in his Individual Capacity, severally and jointly, | Hon. Robert H. Cleland United States District Judge Hon. Anthony P. Patti United States Magistrate Judge |
| Defendants. | |

## <u>FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGEMENT, INJUNCTIVE RELIEF, AND DAMAGES AND JURY DEMAND</u>

Plaintiff Dwayne Seals hereby amends his Complaint, pursuant to Fed. R. Civ. P. 15(A)(1), and alleges that Defendants, Wayne County ("County"), the Wayne County Employees' Retirement System ("WCERS"), and Robert Grden have violated his constitutional and contractual rights by suspending his rightful pension benefits—a significant monthly payment—which he had been drawing without incident for several years. Furthermore, Mr. Seals alleges that Defendants violated his First Amendment rights and the Michigan Whistleblower Protection Act when they acted to deprive Mr. Seals of his pension benefits in retaliation for his having reported to WCERS that it was

1

short-changing him and many other County retirees through a flawed calculation of their monthly pension payments.

Therefore, Plaintiff Dwayne Seals Complains of Defendants as follows:

**Parties, Jurisdiction, and Venue**

1.      Plaintiff Dwayne Seals ("Seals") at all times material to this lawsuit has been a resident of Ann Arbor, Washtenaw County, which is in the Eastern District of Michigan.

2.      Defendant Wayne County ("County") is a political subdivision of the State of Michigan and located in the Eastern District of Michigan.

3.      Defendant Wayne County Employees' Retirement System ("WCERS") is a governmental body created under the Wayne County Charter and regulated by the Ordinances adopted by Defendant Wayne County.

4.      Defendant Robert Grden resides in the Eastern District of Michigan and at all times relevant to this lawsuit has been the Executive Director of WCERS.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions, 28 U.S.C. § 1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases, and 28 U.S.C. § 2201, the Declaratory Judgment Act.

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law claims arising from the same core operative facts as the federal questions.

7.     Venue is proper in this Court as Defendants reside in and conduct their business in the Eastern District of Michigan.

**Factual Allegations**

8.     Dwayne Seals is a 52-year-old man who worked from 2006 to 2016 as Chief Fiscal Advisor–Budget Director for the Wayne County Commission.

9.     On November 27, 2016 Seals resigned his position with the Wayne County Commission.

10.     Availing himself of an offer extended in 2010 to qualifying Wayne County employees and retirees, Seals consolidated his various public employee retirement funds with WCERS.

11.     Availing himself of an offer allowing qualifying Wayne County employees to "purchase" more years of retirement eligibility, in 2011 Seals "purchased" an additional 16 years of retirement eligibility with WCERS.

12.     These additional years of retirement required Seals to transfer approximately $188,000 of retirement savings into his WCERS account.

13.     Mr. Seals was enrolled in a Defined Benefit Plan through WCERS, meaning that Mr. Seals is entitled to draw these payments while he is alive but that there is no residual benefit due after the first five years of receiving pension benefits to his estate or his beneficiaries once he is deceased.

14.     On or about December of 2016, Mr. Seals began drawing a monthly pension payment of approximately $5,415.

15.     On or about January 9, 2017, Mr. Seals resumed employment with Wayne County, this time serving as Deputy Register of Deeds.

16.     Wayne County Register of Deeds Bernard Youngblood appointed Mr. Seals to serve as his Deputy and Chief Financial Officer.

17.     Prior to accepting this position as Deputy Register of Deeds, Mr. Seals consulted with Bruce Campbell, a member of the Wayne County Corporation Counsel, who informed him that as an appointed Deputy to an elected official, Mr. Seals would be able to continue drawing his monthly pension payments.

18.     According to MCL  46.12a(28)(b)(i)(A), a retiree who is drawing a pension from WCERS would only be able to continue drawing his pension payments if he worked no more than 1,000 hours in a year for the public entity from which he retired. This is often referred to as the "1,000-hour rule".

19.     MCL 46.12a(28)(b)(i)(B) and (C) contain exceptions to this 1,000-hour rule that apply to retirees who are "elected or appointed as a county official" after they have begun collecting pension payments. These exceptions allow these elected or appointed officials to continue receiving their pension payments "without change in amount."

20.     When Mr. Seals was appointed to serve as Deputy Register of Deeds in January of 2017, he qualified for the exception found in MCL 46.12a(28)(b)(i)(B), because he was not an elected official at the time of his retirement, and then subsequently was appointed to serve as a public official—namely Deputy Register of Deeds.

21.     Wayne County Register of Deeds Bernard Youngblood, appointed Mr. Seals to be his Deputy pursuant to M.C.L. § 53.91(1), which states, "The register of deeds shall appoint a deputy or deputies . . . ."

22.     This Statute further states in subsection 2, "Before taking office, a person appointed under this section shall take the constitutional oath of office . . . ."

23.     The member of the County's Corporation Counsel, Bruce Campbell, whom Mr. Seals consulted informed him that it was his status as an appointed Deputy to an elected official that exempted him from the 1,000-hour rule.

24.     From January of 2017 until May of 2019, Mr. Seals worked full-time as Deputy Register of Deeds-Chief Financial Officer and received his monthly pension payments from WCERS without fail during that time.

25.     On May 31, 2019, Mr. Seals resigned his position as Deputy Register of Deeds – Chief Financial Officer.

26.     Mr. Seals' pension payments from WCERS continued uninterrupted in June and July of 2019.

27.     On July 18, 2019, Wayne County Clerk Cathy M. Garrett appointed Mr. Seals to the position of Deputy County Clerk/Chief Financial Officer.

28.     According to M.C.L. § 50.63, "Each County Clerk shall appoint 1 or more Deputies . . . ."[1]

29.     The elected Wayne County Clerk appointed Mr. Seals to be her Deputy County Clerk in the same way as she has appointed every other one of her Deputies during her 19 ½ years tenure as elected Wayne County Clerk.

30.     The documentation provided to Mr. Seals with his appointment to serve as Deputy County Clerk designated the County Clerk as his supervisor.

---

[1] This statute indicates that these deputies are "to be approved by the circuit judge . . . and filed in the office of the county treasurer"; however, in her nearly 20 years in office, Wayne County Clerk, Cathy Garrett has always appointed her Deputies, including Mr. Seals, in exactly the same manner and form and this has not involved approval by a circuit judge or filing with the County Treasurer.

31.     It was the shared intention of Ms. Garrett and Mr. Seals that serve as her appointed deputy, pursuant to MCL  50.63 and  46.12a(28)(b)(i), so that Mr. Seals would be exempt from the 1,000-hour limit on his eligibility for pension benefits.

32.     On July 22, 2019, Mr. Seals participated in a New Hire Orientation conducted by Wayne County as part of his new-hire process for his appointment to serve as Deputy to Wayne County Clerk.

33.     On July 23, 2019, Mr. Seals took the oath of office as Deputy County Clerk of Wayne County.

34.     After beginning his appointment as Deputy Wayne County Clerk, Mr. Seals continued to receive his monthly pension payments.

35.     On July 29, 2019, Mr. Seals addressed the WCERS Board during the public comment portion of its monthly meeting, to raise his concerns that pensions had been incorrectly calculated for him and many other retirees.

36.     After this July 2019 meeting, WCERS had members of its own staff evaluate Mr. Seals' calculations, and unsurprisingly, their conclusion was that the WCERS was not short-changing its retirees.

37.     Learning of this conclusion, Mr. Seals believed that WCERS was standing by its incorrect calculations because otherwise, large sums of money would be needed to fix the underpayments to its retirees.

38.    Because of this belief, Mr. Seals wrote to Grden and others at WCERS that he would bring to light using the media and legal recourse his concerns that WCERS was shortchanging him and many other retirees.

39.    On September 30, 2019, the WCERS board met and adopted the conclusion of its staff, that WCERS was not shortchanging its retirees.

40.    Upon hearing the outcome of this meeting, Mr. Seals immediately wrote to Grden and others at WCERS expressing his concern that the WCERS board was shortchanging its retirees.

41.    On October 1, 2019, WCERS, through its counsel, responded in writing to Mr. Seals' good faith efforts to correct what he believed was a matter of public of concern and an injustice to Wayne County retirees by threatening to  seek "attorneys' fees and sanctions against you" . . . if Mr. Seals "continue[d] to make libelous and defamatory statements about" WCERS.

42.    On October 28, 2019, Mr. Seals attended the monthly public meeting of the WCERS Board and reiterated his concerns that WCERS has been knowingly violating the state and county laws governing pension calculations to collectively short change himself and others receiving pension payments by at least $200,000 annually.

43.    Mr. Seals followed up this presentation with an email to WCERS staff and Board members stating that his concern was less about the

8

shortchange in his own payments—the $38 monthly underpayment "will not have a significant bearing on my life, I am however, concerned about the hundred[s] of retirees that Mr. Grden is cheating because of his inability to differentiate monthly average from yearly average."

44.     Mr. Seals reiterated in this email his concern for the hardship this underpayment causes lower-paid retirees.

45.     Upon information and belief, Grden responded to this exchange by requesting from the Wayne County Corporation Counsel an opinion letter stating that Mr. Seals was no longer exempt from the 1,000-hour rule.

46.     Grden initiated this request in retaliation against Mr. Seals for reporting to the WCERS Board that it was violating the terms and conditions of the pension plan and using a flawed calculation that underpaid its retirees' monthly benefits.

47.     Mr. Grden was angry at Mr. Seals for raising this issue and refusing to accept WCERS's own self-serving internal analysis that its calculation was accurate.

48.     At the December 16, 2019 meeting of the WCERS Board, a member of the Wayne County Corporation Counsel staff delivered a confidential legal opinion to the WCERS Board that concluded Mr. Seals was no longer qualified for the exemption to the 1,000-hour rule.

9

49.    This opinion, which WCERS counsel has referred to in letters to Mr. Seals and his counsel, but has consistently refused to produce, apparently concluded that while Mr. Seals was a public official exempt from the 1,000-hour limitation when he was appointed to be Deputy Register of Deeds, he is not considered such an official in his appointment to serve as Deputy County Clerk.

50.    On January 17, 2020, Wayne County Human Resources Director, Steve Mahlin, emailed a letter to Mr. Seals informing him that "an unfortunate mistake" had been made regarding his exemption from the 1,000-hour rule.

51.    Mahlin informed Mr. Seals that his department had "mistakenly thought that because it was determined that you qualified for the 1,000-Hour rule exemption in your previous position as Deputy Register of Deeds, that exemption would similarly extend to your current position as Deputy County Clerk - Financial Officer, *especially given that the County Clerk and Register of Deeds hold equal authority as elected officials*." (emphasis added.)

52.    Mahlin further explained that Mr. Seals' "current position does not qualify for the exemption under the published Michigan Supreme Court criteria that require an exempted position to be designated as holding public office." He added that his position as Deputy Clerk "is not a position required by law to exist, but rather, is a position that was created at the will of the County Clerk."

10

53.    Finally, Mahlin concluded, "I am sincerely sorry that we did not make you aware of this distinction when you started your current position on July 22, 2019." He advised Mr. Seals that he had at that date worked 856 hours in the past rolling 12-month period in counting towards the 1,000-hour rule limit.

54.    Mahlin's communication of January 17, 2020 is the first Mr. Seals learned that he would have his pension payments suspended because he was now deemed to be subject to the 1,000-hour rule.

55.    On January 30, 2020, after being apprised that he had less than 80 hours of work left before his pension payments would be suspended, Mr. Seals wrote to Grden and other members of the WCERS staff and Board to complain that WCERS was retaliating against him while turning a blind eye to its own employees, Grden and Gerard Grysko, both of whom are able to draw their monthly WCERS pension while working over 1,000 hours annually for WCERS as falsely-classified "contract employees."

56.    On or about February 9, 2020, Mr. Seals reached 1,000 hours of employment as Deputy County Clerk.

57.    Even though Mr. Seals was a duly appointed public official—namely, Deputy County Clerk appointed by the Wayne County Clerk as she had appointed every other Deputy during her tenure—Defendants suspended his

monthly pension payments under the pretext that he was not an appointed official exempt from the 1,000-hour rule.

58.    By letter dated February 27, 2020, WCERS informed Mr. Seals that he had exceed 1,000 hours worked and that it had suspended his pension payments.

59.    On March 6, 2020, Mr. Seals requested access to the Opinion provided by the Wayne County Corporation Counsel that WCERS relied upon to determine that Mr. Seals was no longer eligible for appointed-official exemption to the 1,000-hour rule.

60.    On March 27, 2020, Mr. Seals reiterated this request through counsel.

61.    On March 31, 2020, WCERS, through its counsel, informed Mr. Seals through his counsel, that the WCERS Board had met on March 30, 2020 and decided to deny Mr. Seals access to the Opinion of the Wayne County Corporation Counsel.

62.    The WCERS Board has set an appeal hearing for April 27, 2020 regarding Mr. Seals' claim that his pension payments have been inappropriately suspended and that he is entitled to the public-official exemption to the 1,000-hour rule.

63.     On April 27, 2020 and again on May 29, 2020, the WCERS Board considered the appeal brought by Mr. Seals regarding the suspension of his pension payments.

64.     By letter dated June 1, 2020, WCERS informed Mr. Seals that it denied his appeal and that its decision to suspend his pension payment while he serves as Deputy County Clerk/Financial Officer is final.

65.     WCERS informed Mr. Seals in this letter that it relied on the legal opinion provided by Defendant Wayne County's Corporation Counsel to determine that Mr. Seals position of Deputy County Clerk/Financial Officer did not qualify as an exception to the 1,000-hour limitation found in MCL 46.12a(28).

66.     WCERS has not at any time provided Mr. Seals with the legal opinion from the Corporation Counsel or with the facts and legal theory supporting its determination that his position as Deputy to the County Clerk is not subject for the exception in MCL 46.12a(28); whereas, his position as Deputy to the Register of Deeds did qualify for that exception.

67.     The WCERS Board decision to deny Mr. Seals access to the opinion letter is a deliberate furtherance of its retaliation against him for speaking publicly and raising his concerns to the Board and to Wayne County officials that WCERS is knowingly underpaying its retirees.

13

68.     By suspending his pension payments, WCERS and Grden are acting with deliberate intent to retaliate against Mr. Seals for speaking publicly and raising his genuinely held belief to the Board and Wayne County officials that WCERS is knowingly underpaying its retirees.

69.     By providing an opinion to WCERS that Mr. Seals is no longer eligible for the "appointed official" exception to the 1,000-hour rule, Wayne County is acting in a punitive and retaliatory manner against Mr. Seals because his concerns about the pension underpayments bring unwelcomed negative attention to the County, Grden, and WCERS and potentially expose the County to significant additional costs.

## Count 1: 42 U.S.C. § 1983, Violation of Plaintiff's First Amendment Rights

70.     Plaintiff incorporates all above allegations by reference here.

71.     The First Amendment of the United State Constitution, as incorporated into the 14th Amendment, prevents governments from abridging an individual's freedom of speech.

72.     The First Amendment also protects an individual from retaliation because he has exercised his freedom of speech.

73.     On July 29, 2019, Mr. Seals attended the WCERS Board meeting and made public comments to the effect that WCERS was using a pension benefit

calculation that short-changed himself and other retirees by an aggregate of at least $200,000 annually.

74.    On October 28, 2019, Mr. Seals attended another WCERS Board meeting and made public comments to the same effect.

75.    In response to Mr. Seals' comments at these public meetings, Grden enlisted the assistance of the Wayne County Corporation Counsel in create an opinion that would allow WCERS to end Mr. Seals' exemption from the 1,000-hour rule.

76.    Mr. Seals' speech was protected by the First Amendment because it was public speech critical of the policies and actions of WCERS, which is a governmental body.

77.    The County's Corporation Counsel provided an opinion that does not comport with any reasonable interpretation of the governing laws.

78.    Defendants Grden, WCERS and the County coordinated their efforts in response to Mr. Seals' public statements as a way to punish him for raising his concerns, which if verified, would cost WCERS and the County at least $200,000 annually to redress underpayments to WCERS pensioners.

79.    Mr. Seals had also raised his concerns about pension underpayments in writing to Defendant Grden, Deputy Wayne County CEO Richard Kaufman, and other officials of WCERS and the County.

80.    In response to Mr. Seals' communications, Defendants acted by threatening him with legal action, producing an unfounded opinion that Mr. Seals was not exempt from the 1,000-hour rule, and then affirming on appeal the Board's baseless decision to suspend his pension payments.

81.    Defendants took these actions to punish Mr. Seals for speaking out about a potentially costly error they know about and are perpetuating.

82.    Mr. Seals is now losing over $5,400 each month from Defendants' actions to suspend his pension benefits in retaliation for his public speech.

## Count 2: Violation of the Whistleblower Protection Act, MCL 15.361 et seq.

83.    Plaintiff incorporates all above allegations by reference here.

84.    At all relevant times, Mr. Seals has been an employee covered by the Whistleblower Protection Act, MCL 15.361 et seq ("WPA").

85.    Wayne County and WCERS are public bodies as those terms are defined under the WPA.

86.    At all relevant times, Wayne County was Mr. Seals' employer, as that term is defined under the WPA.

87.    Grden and WCERS are agents of Wayne County, in that they exercise apparent authority on behalf of Wayne County and have coordinated

with Wayne County to take actions related to and having impact upon the terms of Plaintiff's employment with Wayne County.

88.   The WPA prohibits discriminating, threatening, or otherwise taking materially adverse actions against an employee reporting a violation or suspected violation of law, regulation, or rule promulgated by a public body or law of the United States.

89.   As public bodies, Wayne County and WCERS's own regulations and policies are covered by the WPA.

90.   Plaintiff reported to Grden, to the WCERS Board, and to officials of Wayne County that WCERS was incorrectly calculating its retirees' pension benefits and collectively shortchanging the County's retirees by at least $200,000 annually.

91.   Defendants responded by coordinating the creation an opinion that they knew to be a misstatement of the law and facts related to Mr. Seals' appointment by the Wayne County Clerk to serve as her Deputy.

92.   Defendants have relied on this opinion, which was commissioned in bad faith for the sole purpose of retaliation against Mr. Seals, to suspend Mr. Seals' monthly pension benefits.

93.   Defendants unlawfully retailed against Mr. Seals for reporting his concerns by threatening him with legal action, producing an unfounded opinion

that Mr. Seals was not exempt from the 1,000-hour rule, and then affirming on

appeal the Board's baseless decision to suspend his pension payments.

94.   Mr. Seals is now losing over $5,400 each month from Defendants'

unlawful retaliation against him for reporting his genuine concerns that they

are violating Michigan and County laws in their calculations of retirees'

pensions.

**Count 3: Breach of Contract**

95.   Plaintiff incorporates all above allegations by reference here.

96.   Article IX, Section 24 of the Constitution of Michigan, 1963, makes

a public servant's retirement benefits a contractual promise: "[t]he accrued

financial benefits of each pension plan and retirement system of the state and

its political subdivisions shall be a contractual obligation thereof which shall

not be diminished or impaired thereby."

97.   Mr. Seals' pension with WCERS, representing his benefits from his

work as a public servant, is a contractual promise as defined by the Constitution

of Michigan.

98.   Defendants were at all times aware of the Mr. Seals' contractual

rights to his pension benefits and the state laws that applied to him and made

him exempt from the 1,000-hour limitation—namely, that he was an appointed Deputy to elected officials, first the Register of Deeds and then the County Clerk.

99.    Defendants were at all times aware that there is no substantive difference with regard to exemption from the 1,000 hour rule between being the Deputy to the Register of Deeds and being Deputy to the County Clerk.

100.    Nonetheless, Defendants acted in bad faith, relying on a concocted opinion, to cease payment of Mr. Seals' monthly pension benefits.

101.    Mr. Seals is now losing over $5,400 monthly because of Defendant's breach of his contractual rights to his pension.

**Relief Requested**

Because of the above allegations, Plaintiff respectfully seeks from the Court the following relief:

A.    Issue a Declaratory Judgment that Mr. Seals, as the Wayne County Clerk's duly appointed Deputy, is a public official entitled to the exemption from the 1,000-hour rule found in MCL 46.12a(28)(b)(i)(B) and/or (C);

B.    Issue an Injunction requiring Defendant WCERS to resume Plaintiff's monthly pension payments;

19

C.     Issue a Judgment against Defendants awarding Plaintiff the entirety of his economic losses arising from Defendants' violations of his rights as described above;

D.     Award Plaintiff his attorneys' fees and costs as allowed under 42 U.S.C. § 1988 and the WPA; and

E.     Award other equitable and legal relief as the Court deems appropriate.

**Respectfully submitted by:**

**PITT, MCGEHEE, PALMER**
**BONANNI & RIVERS, P.C.**

BY: /s/ Robin B. Wagner
Robin B. Wagner (P79408)
Cary S. McGehee (P42318)
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
rwagner@pittlawpc.com
cmcgehee@pittlawpc.com

Date:  June 12, 2020

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of the facts and issues involved in this matter.

**PITT, MCGEHEE, PALMER**
**BONANNI & RIVERS, P.C.**


BY:/s/ Robin B. Wagner
        Robin B. Wagner (P79408)
        Cary S. McGehee (P42318)
        Attorney for Plaintiff
        117 West Fourth Street, Suite 200
        Royal Oak, Michigan 48067
        (248) 398-9800
        rwagner@pittlawpc.com
        cmcgehee@pittlawpc.com

Date:  June 12, 2020