## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DWAYNE SEALS,

      Plaintiff,

v.                                       Case No. 20-11272

WAYNE COUNTY and WAYNE
COUNTY EMPLOYEES'
RETIREMENT SYSTEM, and
ROBERT GRDEN, in his individual
Capacity,

      Defendants.

_____/

## OPINION AND ORDER DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND ORDERING PLAINTIFF TO SHOW CAUSE

### I. INTRODUCTION

Plaintiff Dwayne Seals sues Defendants Wayne County ("County"), Wayne County Employee's Retirement System ("WCERS"), and Robert Grden, the director of WCERS, in his individual capacity. Currently pending before the court are two motions to dismiss the amended complaint, one filed by the Defendant County and a joint motion by Defendants WCERS and Grden. The motions have been fully briefed. Upon review of the parties' filings, the court concludes that a hearing is not necessary. *See* E.D. Mich. LR  7.1(f)(2). For the reasons explained below, the court will deny Defendants' motions to dismiss as to Count I (First Amendment) but the court will order Plaintiff to show cause why it should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts II and III).

## I. BACKGROUND

The following facts are drawn from the amended complaint and the documents

attached thereto. In 2016, Plaintiff—who resides in Washtenaw county—retired from his

position as Chief Financial Officer and Budget Director for Wayne County and began

receiving approximately $5,415 in monthly pension benefits from WCERS. (ECF No. 5,

Page.ID 30–31.) Soon after his retirement, however, Plaintiff took a new appointed

position with the Wayne County Register of Deeds as Plaintiff was appointed by the

Register of Deeds, Bernard Youngblood, to serve as his "Deputy and Chief Financial

Officer." (*Id.* at 31.)

Before accepting the position, Plaintiff conferred with a representative of the

Wayne County Corporation Counsel's office, who confirmed that the appointed deputy

register of deeds position would not interfere with Plaintiff's collection of his full pension.

(*Id.*) The Corporation Counsel concluded that Plaintiff qualified as an appointed official

who fell within an exception to Mich. Comp. Laws § 46.12a(28)—colloquially referred to

as the *thousand-hour rule*. (*Id.*)

The thousand-hour rule requires a Michigan county to suspend pension benefits

for most retired employees who, if reemployed by the county, work more than one

thousand hours in one year. *See* Mich. Comp. Laws § 46.12a(28). However, the statute

includes a specific exception "[f]or a retirant who was not an elected or appointed

county official at retirement, *is elected or appointed as a county official* for a term of

office that begins after the retirant's retirement allowance effective date." *Id.* §

46.12a(28)(b)(i)(B) (emphasis added). Since the corporation counsel concluded that

Plaintiff's appointed deputy register of deeds position, authorized by Mich. Comp. Laws

§ 53.91, fell within this exception, Plaintiff continued to receive his pension benefits during the entire time he held the position. (ECF No. 5, PageID.32–33). Plaintiff resigned from the position in May 2019. (*Id. at* 33.) However, he was soon appointed by Wayne County Clerk Cathy M. Garrett to a newly created "Deputy County Clerk/Chief Financial Officer" position. (*Id.*) Plaintiff contends that he was appointed to the position in the exact same manner as "every other one of [the clerk's] Deputies during her 19 ½ years tenure" and was sworn into the position (*Id.* at 32–34.)

In his new role, Plaintiff continued to receive his pension benefits until the WCERS board determined in December 2019—after reviewing a confidential legal opinion prepared by the Wayne County Corporation Counsel's office—that Plaintiff's new "Deputy County Clerk/Chief Financial Officer" job failed to qualify as an exempt appointed position. (*Id. at* 36.) Plaintiff was notified of this determination through a January 2020 letter, from the Wayne County Human Resources Director, which explained that HR had "mistakenly thought that because it was determined that you qualified for the 1,000-Hour rule exemption in your previous position as Deputy Register of Deeds, that exemption would similarly extend to your current position as Deputy County Clerk - Financial Officer, especially given that the County Clerk and Register of Deeds hold equal authority as elected officials." (*Id. at* 37.) Plaintiff's pension payments were suspended beginning in March 2020. (*Id.*)

Plaintiff alleges that his benefits were actually suspended in retaliation for his public, ongoing dispute with the WCERS board and its chairman Robert Grden over an alleged underpayment to current retirees totaling "an aggregate of at least $200,000 annually." (*Id.* at 36, 41–42.) Such an underpayment would reduce Plaintiff's benefits by

3

$38 each month. (*Id.*) Plaintiff addressed the WCERS board during the public comment period of their July 2019 meeting and stated his concerns about what he viewed as their improper calculation of pension benefits. (*Id.* at 34.) When WCERS staff, however, examined Plaintiff's calculations following the meeting, they found them to be improper. (*Id.*) Plaintiff responded to this conclusion by writing to Grden and other WCERS board members and suggesting he would use the media attention and other legal measures to press his concerns. (*Id.* at 35.) Plaintiff alleges that WCERS responded to such correspondence "by threatening to seek 'attorneys' fees and sanctions against you' . . . if [Plaintiff] 'continue[d] to make libelous and defamatory statements about' WCERS." (*Id.*) Plaintiff reiterated these concerns publicly—again alleging a $200,000 annual underpayment—at WCERS's October 2019 public meeting and followed up with more emails to the board. (*Id.* at 35–36.)

While Plaintiff's complaint only mentioned Plaintiff's interactions with the board during 2019, in his Response to the motions to dismiss he concedes that he had been raising similar concerns about the pension calculations since 2016. (ECF No. 18, PageID.569–70.)

Plaintiff alleges that it was in retaliation for his dogged efforts to correct the calculation of pension benefits that his benefits were actually suspended. (EFC No. 5, PageID.42.) He contends that Defendants WCERS and Grden enlisted the help of Defendant Wayne County and their Corporation Counsel's office in a coordinated effort to retaliate against Plaintiff for his protected speech. (*Id.*) Specifically, he alleges that an attorney in the Wayne County Corporation Counsel's office was told to "create an opinion that would allow WCERS to end Mr. Seals' exemption from the 1,000-hour rule,"

and that the Corporation Counsel obliged by "provid[ing] an opinion that does not comport with any reasonable interpretation of the governing laws." (*Id.*) Though the WCERS board acknowledges relying on the opinion, it has never been released to the Plaintiff. (*Id.*)

Plaintiff's amended complaint pursues three counts against Defendants. First, he brings a claim (Count I) for a violation of his First Amendment Rights under 42 U.S.C. § 1983. (*Id.* at 41–42.) Second, he brings a claim (Count II) under Michigan's Whistleblower Protection Act, Mich. Comp. Laws § 15.361 et seq. alleging that he was retaliated against for "reporting a violation or suspected violation of law, regulation, or rule" as a government employee. (*Id.* at 43–44.) Finally, he alleges WCERS breached its contractual obligation—as defined in the Michigan Constitution—that his pension not be "diminished or impaired." (*Id.* at 45–46.)

### III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. DISCUSSION

Each Defendant filed a motion to dismiss. Defendants' arguments largely overlap. Unless specified otherwise, the court analyzes Defendants' arguments together.

6

### A. First Amendment Retaliation Claim (Count I)

To state a claim for first amendment retaliation, Plaintiff must allege that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)).

Plaintiff bases his First Amendment retaliation claim on the fact that he complained to Defendants WCERS and Grden—at both public hearings and in private communications—about an alledged discrepancy in the calculation of pension benefits that shortchanged beneficiaries a total of $200,000 annually. (ECF No. 5, PageID.42.) Plaintiff asserts that in retaliation for his public statements, WCERS and Grden "coordinated" with the County and their Corporation Counsel to provide the board with a legal opinion "not comport[ing] with any reasonable interpretation of governing laws." (*Id.* at 42–43.) It is undisputed that WCERS relied, at least in part, on this opinion when suspending Plaintiff's benefits under the "thousand-hour rule." (*Id.*) Defendants all argue that Plaintiff cannot satisfy any of the three required elements for a First Amendment retaliation claim. (ECF No. 12, PageID.85–91, 95–97; ECF No. 13, PageID.285–304.) Additionally, the County argues that it is a legally distinct entity and that any alleged bias cannot be transferred from a county employee to WCERS. (*Id.* at 16–17.) The court

analyzes each of these elements of a First Amendment below, concluding that Plaintiff

has stated just enough to set forth a plausible claim.

### 1. Protected Conduct

The court determines as a matter of law whether a public employee engaged in

constitutionally-protected speech. *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004).

Where the plaintiff is a public employee, the plaintiff must meet three requirements to

establish that his speech is protected: (1) the employee's speech must relate to a matter

of public concern, *see Connick v. Myers*, 461 U.S. 138, 143; (2) if the employee's

speech relates to a matter of public concern, the employee's interest "in commenting on

matters of public concern ... [must] outweigh[ ] the employer's interest in promoting the

efficiency of the public services it performs through its employees," see *Pickering v. Bd.

of Educ.*, 391 U.S. 563, 568; and (3) the employee's speech must not be made

"pursuant to ... official duties," *Garcetti v. Ceballos*, 547 U.S. 410, 421. These three

requirements—the "public concern," "balancing," and "pursuant to" requirements—must

all be satisfied for a public employee's speech to be protected. *Evans-Marshall v. Bd. of

Educ.*, 624 F.3d 332, 338 (6th Cir. 2010).

Defendants challenge the first requirement: they argue that Plaintiff has alleged

facts to show that his speech relates to a matter of public concern. (Defendants seem to

concede that Plaintiff's speech—disputing the accuracy of pension calculations—fell

outside his official duties.) An individual's speech addresses a matter of public concern

when it "involves issues about which information is needed or appropriate to enable the

members of society to make informed decisions about the operation of their

government." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001)

(internal quotation and citation omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. Accordingly, the Sixth Circuit employs the "focus" test in determining whether speech touches on a matter of public concern. *Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004). The court looks to the point or focus of the speech in question and what the speaker intended to communicate. *Id.* Even speech in private conversations is entitled to protected status when the focus is a matter of public concern. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 543–44 (6th Cir. 2012).

Since Plaintiff concedes that his speech touched a private concern—the amount of pension benefits he personally was receiving—Plaintiff's public statement and private correspondence with the pension board falls into the category of "mixed speech." Where the "focus" of an employee's mixed speech is an expression of personal grievances, the speech is not entitled to protection. *Farhat*, 370 F.3d at 593. This includes complaints "of a personal nature that come from working with [a public official] on a daily basis rather than those that touch on political, policy, or social matters affecting the public." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 296 (6th Cir. 2012).

Here, the alleged facts suggest that the focus of Plaintiff's speech was on a matter of public concern. While Plaintiff clearly had a personal interest in the pension payments, the purported pension miscalculation was costing Plaintiff only around $450 annually but costing all beneficiaries over $200,000; Plaintiff expressly stated the money "will not have a significant bearing on my life, I am however, concerned about the hundred[s] of retirees that Mr. Grden is cheating because of his inability to differentiate

9

monthly average from yearly average." (ECF No. 5, PageID.36.) Such a large miscalculation, if true, would qualify as a newsworthy example of government malfeasance. *See Handy*-Clay, 695 F.3d at 543 (quoting 547 U.S. at 425) (noting that "[t]he [Supreme] Court reiterated… in *Garcetti*… that '[e]xposing governmental inefficiency and misconduct is a matter of considerable significance'"). And, the Sixth Circuit has affirmed that the "public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Id.* (quotations omitted). Thus, Plaintiff has satisfied his initial burden of showing that his speech primarily addressed a matter of public concern.

### 2. Adverse Action

Next, Defendants argue that Plaintiff has not sufficiently alleged an adverse action because "[s]upending Plaintiff's pension as required by state law would not [qualify as] adverse." (ECF No. 13, PageID.300.) Defendant Wayne County alternatively argues that, as two legally distinct entities, retaliatory intent cannot be transferred between the County's employees and the WCERS Board. (ECF No. 12, PageID.90.)[1]

#### a. Defendants Are Unable to Establish that the Law Required the Suspension of Plaintiff's Pension.

Defendants offer considerable legal analysis for why Plaintiff should not, as a matter of law, be classified an exempt "elected or appointed as a county official" under

---

[1]Because any action taken against a speaker qualifies as adverse if it "would chill or silence a person of ordinary firmness from future First Amendment activities, *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019), this court finds there is no question that a $5,400 reduction in monthly income—due to an employee's alleged protected speech—would be enough to silence an ordinary employee. Indeed, the Sixth Circuit has previously been noted that a "loss of pay… regardless of the form in which the deprivation occurred" qualifies as an adverse action. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 710 (6th Cir. 2007).

Mich. Comp. Laws § 46.12a(28), and as such, one who can draw a pension while being reemployed. Precedent suggests, under Michigan Law, the five "indispensable" elements assessed in *People v. Freedland*, 308 Mich. 449, 457, 14 N.W.2d 62, 65 (1944), form the appropriate test to determine if a deputy county clerk is a public official. *See Dosker v. Andrus*, 342 Mich. 548, 551–53, 70 N.W.2d 765, 767 (1955) (applying the five-element *Freedland* test to determine that "deputy register of deeds meets the established criteria" to be considered a public official). For a position to qualify under *Freeland*:

> (1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not by only temporary or occasional.' *Freedland*, 308 Mich. at 457–58, 14 N.W.2d at 65.

Defendants contend that Plaintiff's new Deputy Clerk/Chief Financial Officer position does not satisfy the *Freeland* test's first four requirements. (ECF No. 13, PageID.289–91; ECF No. 12, PageID.85–88.)

Hoping to short circuit a more detailed analysis under the *Freeland* test, Defendants first argue that Plaintiff was never properly appointed to the position of deputy clerk under Mich. Comp. Laws § 50.63—the provision cited by Plaintiff in his complaint as providing legislative authorization for his appointment—because his appointment was not "approved by the circuit judge" as the statute requires. (*See* ECF No. 12, PageID.86–87). Plaintiff, however, also alleges that he has been appointed in

the exact same method of all the county clerk's other deputies throughout her long tenure in office. (ECF No. 5, PageID.33), and this court must accept that as true.

The court is skeptical of the argument proffered by the County, as it appears to lead to the conclusion that every Wayne County deputy clerk appointed during the last twenty years was not properly appointed to their offices. Moreover, it also appears there are more specific statutory authorities, applicable only to high population counties, that grant the County Clerk authority to appoint deputies without the approval of "the circuit judge."[2] *See* Mich. Comp. Laws Ann. § 45.41 ("In all counties of this state having a population of more than 50,000 where it is provided by law that the county treasurer, county clerk and register of deeds shall receive salaries in lieu of fees, each of said officers may appoint a deputy or deputies who may perform all the official acts which the officer making such appointment might legally do. . ."); *see also* Mich. Comp. Laws § 50.131 ("In counties having a population of more than 500,000, the county clerk *shall appoint* a chief deputy circuit court clerk, 1 deputy circuit court clerk for each acting circuit judge in said county. . . and such number of deputy county clerks. . . as may be fixed by the board of supervisors.") (emphasis added).[3] Given that these alternative legal authorities could also support Plaintiff's appointment, this court rejects Defendants'

_____

[2] Mich. Comp. Laws Ann. § 50.63's language requiring that deputy appointments be "approved by *the* circuit judge," as opposed to *the chief* circuit judge, presents a further indication that the statute is likely meant to serve as a default rule applicable to the smallest counties—who have only one circuit judge—that are not covered by a more specific provision like Mich. Comp. Laws § 45.41 or § 50.131.

[3] Wayne County, Michigan currently has a population of 1.7 million. U.S. Census Bureau, *Quick Facts: Wayne* County, (July 1, 2019), https://www.census.gov/quickfacts/waynecountymichigan.

argument, at this juncture at least, that the appointment was invalid simply because it was not approved by "the circuit judge" as required Mich. Comp. Laws § 50.63.

While Plaintiff's complaint also appears to have cited the wrong legal authority—Mich. Comp. Laws § 50.63—to support the validity of his appointment, such a mistake is not fatal to his claim. *See Percell v. Kentucky Dep't of Military Affairs*, No. 3:16-CV-721-TBR-LLK, 2017 WL 6347973, at *8 (W.D. Ky. Dec. 12, 2017) (*quoting Morales–Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003)) (finding that "list[ing] the wrong statute in his complaint" is not fatal because "[a] complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8… as long as relief is possible under any set of facts that could be established consistent with the allegations").

Further, given the limited nature of the record before the court at the motion to dismiss stage, it is impossible to determine whether Plaintiff's appointed position would satisfy the other elements of *Freeland*. Defendants have introduced public records that they argue undercut Plaintiff's claim; these include Plaintiff's job description (ECF No. 12-4), minutes from the WCERS board meeting where Plaintiff's benefits were discontinued (ECF No. 12-5), and minutes from the board's appeal hearing (ECF No. 12-6). But after "drawing all reasonable inferences in favor of the Plaintiff," these documents are insufficient to rebut his complaint. *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015). *See Dearborn Fire Fighters Union, Local No. 412, I. A. F. F. v. City of Dearborn*, 394 Mich. 229, 310, 231 N.W.2d 226, 261 (1975) (noting that the" length of tenure element is a significant but not dispositive factor" and so the "overall reality must

be determined *from an examination of all the [Freeland] factors* applied to the instant situation.")(emphasis added).

When a person holds an appointed position authorized by statute, *Freeland* analysis becomes a highly fact-dependent inquiry that cannot be completed on the limited record currently available to the court. The only substantial piece of evidence on this question is the job description. (*See* ECF No. 12-4.) After drawing all inferences in favor of Plaintiff, the job description can reasonably be construed as "a delegation of a portion of the sovereign power" of the Clerk's office to a deputy. *Freedland*, 308 Mich. at 457, 14 N.W.2d at 65. The county Clerk's statutory duties include collecting court costs and "render[ing] an accounting to the court of all funds," Mich. Comp. Laws Ann. § 600.571, one of the duties delegated to Plaintiff.  The job description expressly provides that "the Deputy County Clerk/Finance Officer will oversee and manage the statutorily mandated functions commensurate with the Wayne County Clerk's responsibilities as the Fiduciary Agent for the Third Circuit Court." (ECF No. 12-4, PageID.115) Consequently, the court cannot conclude at this stage that the *Freeland* factors required the suspension of Plaintiff's pension benefits as a matter of law.[4]

**b. Transferred intent.**

---

[4] While Defendants correctly observe that Michigan Law requires deference be given to the pension board's determination when reviewing such an adjudication, the court is required to determine "whether the decision… was supported by competent, material, and substantial evidence *on the whole record.*" *Dignan v. Michigan Pub. Sch. Employees Ret. Bd.*, 253 Mich. App. 571, 576, 659 N.W.2d 629, 633 (2002) (emphasis added). Although Defendants have attached board meeting minutes, such information does not appear to constitute the "whole record" of the adjudicative proceeding. The underlying legal analysis reviewed and adopted by the pension board is not yet part of the record at this stage and precedent is clear that the whole record is needed before the court can conduct even a deferential review of the board's determination.

14

Defendants also argue that retaliatory intent cannot be transferred between Defendant Grden and an employee of Wayne County because they contend Defendant WCERS and the County are separate legal entities.[5] (*See* ECF No. 12, PageID.93–95.) But such a detailed analysis is unnecessary at this juncture because this court finds that Plaintiff pled the minimum amount required to allege a plausible conspiracy between "Defendants Grden, WCERS and the County." (ECF No. 5, Page.ID 42.)

A civil conspiracy involves an agreement between two or more persons (or distinct legal entities) to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To state a claim for a civil conspiracy to violate a right protected by § 1983 "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* at 944. The Sixth Circuit has clarified that an "[e]xpress agreement among all the conspirators is not necessary…. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.*

Here, Plaintiff alleges a coordinated effort between the county and WCERS to retaliate against him for his repeated efforts to question WCERS's calculation of pension benefits. (ECF No. 5, Page.ID 41–43.) Plaintiff provided detailed factual

---

[5] Wayne County alternatively argues the creation of even a "biased legal opinion is not compensable." (ECF No. 12, PageID.94.) But the issue is not so clear cut; in *Buddenberg v. Weisdack*—a First Amendment retaliation case—the Sixth Circuit Court of Appeals declined to grant a contract attorney's motion to dismiss where the attorney purportedly created a biased report containing "'skewed facts,'… 'flat-out lies,' or… 'downright bizarre and obviously pretextual' [allegations]" justifying discipline by plaintiff's public employer. 939 F.3d 732, 737 (6th Cir. 2019). To be sure, it seems unlikely that discovery will produce factual support for Plaintiff's claim of attorney misconduct, but such a claim cannot be categorically dismissed on a 12(B)(6) motion.

pleadings that both the Deputy Wayne County CEO Richard Kaufman and the head of

WCERS, Defendant Grden, were aware of his concerns about the pension calculations.

(*Id.* at 42.) Both the County and WCERS would theoretically benefit if the alleged

conspiracy was successful in silencing Plaintiff and avoiding both negative publicity and

an extra $200,000 in pension payouts. (Defendant county would eventually be forced to

make larger contributions to the pension system to cover the unanticipated extra benefit

payments. And, Plaintiff has alleged multiple, specific overt actions taken by Defendants

in pursuit of this alleged retaliatory conspiracy that cumulated in the suspension of his

pension benefits.  (*Id.* at 42–43.)

Though the court may entertain a greegree of skepticism that the conspiracy

claim would survive a motion for summary judgment once discovery is completed,

Plaintiff's allegations of a coordinated effort are plausible enough—barely—to survive a

motion to dismiss. Both the County and WCERS could plausibly benefit from

participation in such a conspiracy, and Plaintiff has provided detailed factual allegations

of acts performed by agents of both defendants in alleged furtherance of the conspiracy.

So, currently, there is no need to impute intent between the separate entities (under a

"cat's paw" theory of liability or otherwise).

### 3. Causation

Finally, all Defendants argue that Plaintiff's allegations do not suggest a close,

temporal proximity between Plaintiff's protected conduct and the adverse actions

alleged because Plaintiff complained to the pension board for years. (*See* ECF No. 13,

PageID.298.) To meet the causation element of First Amendment retaliation, a public

employee must demonstrate (1) that an individual defendant proximately caused the

adverse employment action and (2) that the individual defendant was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The causal element requires the employee to "point to specific, nonconclusory allegations reasonably linking [his] speech to employer discipline." *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (internal quotations and citations omitted).

But, for purposes of a 12(b)(6) motion, Plaintiff need only allege, not prove, causation. *See Pack v. Martin*, 174 F. App'x 256, 265 (6th Cir. 2006). In fact, the issue of caution typically presents a "factual issue to be resolved by a jury." *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519-20 (6th Cir. 2008)). The timing between Plaintiff's criticisms of WCERS and Defendants' alleged retaliatory conduct will be relevant at the summary judgment stage. But, at this stage in the proceedings, the court is persuaded that Plaintiff's allegations are at least sufficient to survive dismissal. The court will deny Defendants' motions as to Count I.

### B. Grden's Claim of Qualified Immunity

Defendant Grden, the Executive Director of the Retirement System, argues separately that he entitled to qualified immunity because "was acting within the scope of his employment" when he suspended Plaintiff's benefits. (ECF No. 13, PageID.308–12.) The court rejects this argument because it finds that precedent has clearly established that a public official cannot retaliate against someone for speech on matters of public concern, even if the exact method of alleged retaliation is somewhat novel.

Under certain circumstances, qualified immunity shields governmental officials, who are performing official duties, from civil liability. *Sinick v. Summit*, 76 Fed.Appx.

675, 679 (6th Cir. 2003). The affirmative defense shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant official violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The ultimate question is whether the government official had "fair warning" that his conduct violated the plaintiff's constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). There are two general steps in the qualified immunity analysis. First, "[t]he court must determine whether the 'the facts alleged show the officer's conduct violated a constitutional right.'" *Cass v. City of Dayton*, 770 F.3d 368, 374 (6th Cir. 2014) (quoting *603 *Saucier v. Katz*, 533 U.S. 194, 201(2001)). If the plaintiff's evidence demonstrates a constitutional injury, the court must then ask, "whether that right was 'clearly established.'" *Id.* (quoting *Saucier*).

The Sixth Circuit has cautioned that "*it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.*" *Buddenberg v. Weisdack*, 939 F.3d 732, 738–39 (6th Cir. 2019) (*quoting Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)) (emphasis added).

As addressed in Part A of this opinion, Plaintiff has alleged sufficient facts to establish he engaged in constitutionally protected conduct—publicly criticizing pension calculations—that motivated Defendants to engage in an adverse action against him, so

the first prong of the inquiry has been satisfied. "That leaves the question whether the right was clearly established—whether a reasonable official in [Defendant Grden's] position would have been aware of the violation." *Buddenberg*, 939 F.3d at 741. As a general matter, the Sixth Circuit has long recognized that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech. *See, e.g., See v. City of Elyria*, 502 F.3d 484, 495 (6th Cir. 2007) ("[A] public employee's right to speak on matters of public concern without facing improper government retaliation [is] settled."). Thus, "[a]ll public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern." *Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997).

Defendant Grden, argues that because his alleged conduct only involved "coordinating efforts" between the WCERS board and the County it would not have been readily apparent to him that helping to obtain such a "bad" legal opinion violated Plaintiff's rights. (ECF No. 13, PageID.311.) The nature of Grden's role in the alleged conspiracy does not mean Defendant should be excused on qualified immunity grounds. A defendant can engage in a novel type of action, but if his underlying motive is punishing an individual for exercising her clearly established First Amendment rights, he should still know the conduct is wrong. For example, in *Buddenberg* the Sixth Circuit denied an outside attorney's request for qualified immunity, though the Plaintiff's alleged role was limited to conducting an investigation and preparing a disciplinary report. *See Buddenberg,* 939 F.3d at 737. The plaintiff alleged the report contained falsifications and recommended disciplinary action by an internal government board. *Id.* While the attorney in *Buddenberg* had no direct role in the actual board decision to discipline the

19

plaintiff (allegedly due to her whistleblower complaints), the court nevertheless declined to dismiss the attorney on qualified immunity grounds. *Id* at 738. Likewise, since it is alleged Grden acted with the intent to retaliate against Plaintiff for exercising his First Amendment rights, the limited nature of Grden's alleged role in the alleged conspiracy does not necessitate a Federal Rule of Civil Procedure 12(B)(6) dismissal on qualified immunity grounds.

### C. Order For Plaintiff To Show Cause Why State Law Claims Should Not Be Dismissed

At this juncture, the court is not inclined to exercise supplemental jurisdiction over Plaintiff's state law claims (Count II and Count III) because both involve novel and complex interpretations of state law that are likely to predominate over the federal claim.

A federal court may exercise supplemental jurisdiction over each claim in an action that shares a "common nucleus of operative facts" with a claim that invokes the court's original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). However, the federal court need not exercise its authority to invoke supplemental jurisdiction in every case in which it is possible to do so. *Id.* at 726. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Id.* Justification for this doctrine "lies in considerations of judicial economy, convenience, and fairness to litigants." *Id.* Therefore, "[i]n deciding whether to exercise supplemental jurisdiction . . . a judge must take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Senra v. Smithfield*, 715 F.3d 34, 41 (1st Cir. 2013). If these considerations are not present, "a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726. Additionally, supplemental jurisdiction may be denied "if the federal claims are dismissed before

20

trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726–27.

Title 28 U.S.C. § 1367 authorizes federal courts to exercise supplemental jurisdiction. A court has the discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of state law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiff's (Count II) invokes Michigan's Whistle Blower Protection Act ("WPA"), Mich. Comp. Laws §§ 15.361–69, which protects a public "employee" against retaliatory discharge for reporting a "violation or a suspected violation of a law or regulation or rule." *Mich. Comp. Laws* § 15.362. While Plaintiff argues he should be classified as an appointed public official under the State statute governing retirement benefits, he instead alleges that he should be classified as a "covered employee" under the WPA because the WPA does not cover government officials. (ECF No. 5, PageID.43.) Second, Plaintiff's WPA act claims require a determination that the County and WCERS should be considered a "single employer" or "integrated enterprise" to make the act applicable to the WCERS's decision to discontinue Plaintiff's benefits. (ECF No. 18, PageID.589.) But Plaintiff cites no legal authority that directly supports his contention that pensions boards should not be treated as a separate entity. (*See id.*) Therefore, considering Plaintiff's WPA claims would require this court to render novel

interpretations of Michigan law on at least two different fronts, the court is inclined to believe that Michigan courts would be better equipped to address these complex interpretations of Michigan statute.

Plaintiff's (Count III) invokes the Michigan Constitution's Art. 9, § 24 guarantee that pension benefits "shall be a contractual obligation thereof which shall not be diminished or impaired thereby" to argue that WCERS suspension of his pension payments amounted to a breach of contract. (ECF No. 5, PageID.45.) While it seems unlikely that Plaintiff's claim as pleaded is sufficient to stand—as even an ordinary contract claim—the court is especially hesitant to analyze novel questions regarding the scope and applicability of state Constitutional provisions and whether the provision essentially creates a private right of action.[6] Furthermore, it seems probable that the "scope of the issue raised"—by interpreting this state constitutional provision—would "substantially predominate" over the single federal claim at issue. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

### V. CONCLUSION

Plaintiff has alleged just enough facts to survive dismissal at this stage on the First Amendment claim (Count I). The court will order Plaintiff to show cause why his state law claims (Counts II and III) should not be dismissed without prejudice. Accordingly,

IT IS ORDERED that Defendants' motions to dismiss (ECF Nos. 12 & 13) are DENIED as to Count I (First Amendment).

---

[6] This court's hesitation extends to Plaintiff's proposed tortious interference claim based on the same state constitutional provision.

IT IS ORDERED that Plaintiff is show cause by **November 20, 2020** why, the court

should not decline to exercise supplemental jurisdiction over Counts II and III and

dismiss them without prejudice.

      Unless otherwise ordered, no response or reply brief shall be presented.

                                      s/Robert H. Cleland           /
                                      ROBERT H. CLELAND
                                      UNITED STATES DISTRICT JUDGE

Dated:  October 30, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 30, 2020, by electronic and/or ordinary mail.

                                        s/Lisa Wagner              /
                                      Case Manager and Deputy Clerk
                                      (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-11272.SEALS.MTD.AAB.RHC.docx