UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE SEALS,

      Plaintiff,

v.                              Case No. 20-11272

WAYNE COUNTY EMPLOYEES'      Sean F. Cox
RETIREMENT SYSTEM,           United States District Court Judge

      Defendant.
_____/

**OPINION & ORDER ON
PLAINTIFF'S MOTION FOR ATTORNEY FEES
AND DEFENDANT'S MOTION TO STAY**

Plaintiff's § 1983 First Amendment retaliation claim against Defendant proceeded to a jury trial. The jury reached a verdict in favor of Plaintiff and awarded him $180,000.00 in damages. The matter is currently before the Court on two motions: 1) Plaintiff's "Motion for Attorneys' Fees Pursuant To 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)" and 2) Defendant's Motion for Stay Under Fed. R. Civ. P. 62. The parties have briefed the issues and the Court concludes that oral argument is not necessary. Local Rule 7.1.

For the reasons that follow, the Court shall grant the Motion for Attorneys' Fees in part and deny it in part. This motion contains three separate sections wherein Plaintiff requests: 1) attorney and professional fees of more than $300,000.00; 2) $1,786.22 in non-billable expense costs; and 3) interest on the judgment to be issued at the rate of 5.46%. The requests for the last two items are unopposed and shall be granted. As to the requested attorney-fee award, the Court shall reduce Mr. Nacht's hourly rate from $540 to $350 per hour. The Court rejects all other

1

challenges to the requested attorney fee award.

As to the second motion, Defendant's Motion to Stay, the Court denies that motion to the extent that it seeks a discretionary stay without a bond.  In its reply brief, however, Defendant offers to obtain a bond if its request for a discretionary stay is denied.  The Court will grant a stay, as of right under Fed. R. Civ. P. 62(b), if Defendant posts a bond in the full amount of the judgment to be issued.

## BACKGROUND

This case, filed on April 17, 2020, has a fairly lengthy history.  The action was originally assigned to the Honorable Robert Cleland, who presided over the case through discovery and motion practice, until it was ready for trial.  The case was reassigned to the undersigned judge on July 28, 2023, pursuant to Administrative Order 23-AO-035.

Plaintiff Dwayne Seals ("Plaintiff" or "Seals") filed this action against three Defendants: 1) Wayne County; 2) the Wayne County Employees' Retirement System ("the Retirement System"); and 3) Robert Grden.  Plaintiff asserted a § 1983 count and two state-law claims.

At the time the case was filed, Plaintiff was represented by attorneys with the Pitt, McGehee Law Firm.  Thus, that firm drafted the original complaint and the June 12, 2020 Amended Complaint in this action.

On March 25, 2021, Judge Cleland declined to exercise supplemental jurisdiction over Plaintiff's state-law claims, and dismissed Counts II and III without prejudice.  (ECF No. 25). Plaintiff sought reconsideration of that decision (ECF No. 27) but Judge Cleland denied that motion.  (ECF No. 28).

On July 31, 2020, two motions to dismiss were filed by Defendants.  (*See* ECF No. 12,

Wayne County's Motion to Dismiss, and ECF No. 13, a Motion to Dismiss filed by the Retirement System and Grden). In an Opinion and Order issued on October 30, 2020, Judge Cleland ruled on the motions to dismiss. (ECF No. 22).

Plaintiff's current counsel did not enter this case until April 29, 2021 – after the motions to dismiss (and the motion seeking reconsideration of Judge Cleland's dismissal of the state-law claims) had been briefed and ruled upon. (*See* ECF No. 32).

Following the close of discovery, Defendant Wayne County filed a summary judgment motion on June 27, 2022. (ECF No. 54). On that same date, a summary judgment motion was filed on behalf of the Retirement System and Grden. (ECF No. 52).

In response to those two summary judgment motions, Plaintiff filed a combined response brief that addressed both motions. (*See* ECF No. 58, titled "Plaintiff Dwayne Seals' Brief In Opposition To Defendants' Wayne County And Wayne County Employees' Retirement System Motions for Summary Judgment."). In a motion wherein Plaintiff sought leave to exceed the page limitations for that motion, Plaintiff stated:

1.   Plaintiff has determined that Defendants' two briefs in support of their two motions are substantially similar and that his brief in opposition to one motion would be substantially similar to his brief in opposition to the second motion.

2.   In the interest of efficiency and conserving judicial resources, Plaintiff seeks to file one brief in opposition to both motions, rather than submit two nearly identical briefs.

(ECF No. 57). Judge Cleland agreed, granted that request, and permitted Plaintiff to file one over-sized (ie, a 45-page) response brief in opposition to two summary judgment motions filed by Defendants.

On August 4, 2022, Plaintiff's claims against Defendant Robert Grden were voluntarily

dismissed.  (ECF No. 59) (dismissing claims against Grden with prejudice and without costs to either party).

In an Opinion and Order issued on November 10, 2022, Judge Cleland granted summary judgment in favor of Defendant Wayne County.  (ECF No. 64).  In that same Opinion and Order, Judge Cleland denied the Retirement System's Motion for Summary Judgment.  Thus, Plaintiff's claim against the Retirement System was the only claim remaining for trial.

The Retirement System filed a motion asking the Court to reconsider the denial of its summary judgment motion. (ECF No. 66).  Judge Cleland denied that motion, after ordering Plaintiff to file a response to the motion.

Soon after Judge Cleland denied the Retirement System's Motion for Reconsideration, this action was reassigned to the undersigned judge.

Upon reassignment, the only remaining claim was Plaintiff's § 1983 First Amendment retaliation claim against the Retirement System.

Due to the age of this case, this Court scheduled the jury trial to commence on September 21, 2023.

The parties filed nine separate motions in limine prior to trial.  The jury was impaneled on September 21, 2023, and the trial began on that date.   The parties made their closing arguments on the morning of September 29, 2023.  The jury returned a verdict in favor of Plaintiff later that same day, awarding him $180,000.00 in damages.  A Judgment in favor of Plaintiff was issued on September 29, 2023:

> On September 29, 2023, the jury has rendered a verdict in the amount of $180,000.00 payable to Plaintiff DWAYNE SEALS with costs, attorneys' fees and interest to be assessed if applicable.
> IT IS SO ORDERED.

4

(ECF No. 128).

After trial, the Retirement System filed a Motion for Judgment As A Matter Of Law Or, Alternatively, For A New Trial.  After full briefing by the parties, this Court denied that motion in an Opinion and Order issued on January 8, 2024.

On January 19, 2024, Plaintiff filed the instant "Motion For Attorneys' Fees Pursuant To 42 U.S.C. 1988 And Fed. R. Civ. P. 54(d)."  On February 7, 2024, the Retirement System filed a Motion for Stay Under Fed. R. Civ. P. 62."   Both motions have been fully briefed.

**ANALYSIS**

I.     **Plaintiff's Motion For Attorneys' Fees**

"Plaintiff's Motion For Attorneys' Fees Pursuant To 42 U.S.C. 1988 and Fed. R. Civ. P. 54(d)" contains three separate sections wherein Plaintiff requests: 1) attorney and professional fees of more than $300,000.00; 2) $1,786.22 in non-billable expense costs; and 3) interest on the judgment to be issued at the rate of 5.46%.  Each are addressed below.

A.     **Attorney Fees**

Pursuant to 42 U.S.C. § 1988, "[i]n any action to enforce a provision of" § 1983, "the court, in its discretion, may allow the prevailing party" a "reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b). The Supreme Court has directed that a "prevailing plaintiff should ordinarily recover an attorney's fees unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

At trial, Seals prevailed as to his § 1983 claim against the Retirement System and was awarded $180,000.00 in damages.  Seals now seeks an award of reasonable attorney's fees as the prevailing party.

A district court's award of attorney fees is reviewed for abuse of discretion.  *Hubbell v. Fedex Smartpost, Inc*., 933 F.3d 558, 575 (6th Cir. 2019).  The Sixth Circuit has found such an abuse of discretion where a district court fails to adequately explain its reasoning or consider the competing arguments of the parties.  *Id.*

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."  *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citation omitted).

"When making a determination of a reasonable attorney fee, a district court begins by determining 'the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'"  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock–Ladd, supra*).   "Multiplying the two metrics together – hours x hourly rate – creates the lodestar amount."  *Betancourt v. Indian Hills Plaza, LLC*, 87 F.4th 828, 831 (6th Cir. 2023).

From there, the "district court may adjust the figure based on 'relevant considerations peculiar the subject litigation."  *Id.* (citation omitted).  "The 12 factors from *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)," known as the "*Johnson factors*," *may* be considered by the district court and they "include the time and labor required by the case; the novelty and difficulty of the questions presented; the skill needed to perform the legal service properly; and the experience, reputation, and ability of the attorneys."  *Id*.; *see also Echols v. Express Auto, Inc*., 857 F. App'x 224,226-27 (6th Cir. 2021) (Explaining that, after the lodestar calculation, the district court "has the discretion" to adjust the amount up or down based on the

*Johnson* factors; *Murphy v. Vaive Wood Products Co.,* 802 F. App'x 930, 937 (6th Cir. 2020) (Explaining that many of the *Johnson* factors are subsumed within the lodestar calculation).

The chart below reflects the attorney fees requested by Seals in this case, and notes the billing rate of each attorney, and the number of hours worked by each attorney on this case.[1]

| Attorney: | Hourly Rate: | Number of Hours: | Total: |
|---|---|---|---|
| David Nacht (lead trial attorney) | $525 | 217.27 | $114,066.75 |
| Amanda Ghannam (associate trial attorney) | $280 | 546.2 | $152,936.00 |
| Nicholas Roumel (a senior trial attorney) | $450 | 1 | $450.00 |
| Fabiola Galguela (associate attorney) | $200 | 40.11 | $8,022.00 |
| Sam Estenson (associate attorney) | $250 | 64.7 | $16,175.00 |
| Total | | 869.28 Hours | $291,649.75 |

In response to the pending motion, the Retirement System does not dispute that an attorney fee award is appropriate in this case, but asks the Court to award Seals less than he has requested. The Retirement System asserts the following objections: 1) the hourly rate charged by Mr. Nacht ($525 per hour) is excessive and should be reduced to $316 per hour; 2) Plaintiff's law firm billed an unreasonably high number of hours for the work required by this case; 3) many of the billing entries are vague and do not allow the Court to determine if the work was reasonably expended; and 4) consideration of a number of other factors warrants a reduction in the requested fees.

---

[1]Plaintiff also asserts that, "[i]n addition to the attorney's time and fees, Plaintiff incurred 159.4 hours of paralegal and law clerk time." (Pl.'s Br. at 3). Plaintiff seeks a total of $27,895.00 for those fees. The Retirement System has not objected those requested fees.

1. **Mr. Nacht's Hourly Rate**

The Retirement System concedes that the hourly billing rates of the associates who worked in this case appear reasonable. (Def.'s Br. at 5 n.3). It contends, however, that Mr. Nacht's hourly rate of $525.00 per hour is excessive. (*Id*.).

The Retirement System notes that a rate of $525 "is ***towards the very top*** of the hourly rates surveyed in the State Bar of Michigan's 2023 Economics of Law Practice ('Survey') in a case such as this." (Pl.'s Br. at 1) (emphasis in original). It contends that Mr. Nacht's "hourly rate should be reduced to $316/hour based on the prevailing market rate for similar non-class action civil rights cases like this lawsuit." (*Id*.). The Retirement System directs the Court to some district court decisions wherein the district court reduced hourly rates: *Pucci v. Somers*, 834 F. Supp.2d 690, 700-04 (E.D. Mich. 2011 J. Lawson) (reducing $400/hour to $250/hour in First Amendment retaliation case, consistent with survey); *HRT Enterprises v. City of Detroit,* 2424 WL 195960 at * 2-8 (E.D. Mich. 2024, J. Lawson) (reducing $450/hour to $300/hour per survey). It also directs the Court to *Stanley v. Macomb Cnty*., 2024 WL 95673 (E.D. Mich. 2024, J. Lawson) (approving hourly rate of $300 per hour in First Amendment Retaliation case).

Because it has been challenged, this Court must evaluate the reasonableness of the hourly rate charged by Mr. Nacht for his work in this case.

Mr. Nacht asserts that his "current hourly billing rate" is $750 per hour. (Nacht Decl. at 2). He asserts that "Mr. Seals was charged for my time at the rate of $525.00 per hour, well below my current hourly billing rate." (*Id*.) His Declaration states that he has represented clients in a variety of areas, "including employment, education, civil rights, non-compete, and criminal." (*Id*.). He is seeking an hourly rate that is between the 75th and 95th percentiles for

8

civil rights attorneys surveyed by the State Bar.

In arguing that a rate of $525 per hour in this case is reasonable, Plaintiff's briefs stress that Seals "is a private pay client subject to an hourly fee agreement." (Pl.'s Reply Br. at 1). Seals contends that:

> Having a private pay Plaintiff is unique because in the vast majority of civil rights litigation, the Plaintiff is not paying for legal representation on an hourly basis for the Court must construct a reasonable hourly rate. Here, Plaintiff paid attorney Nacht $525 per hour for the legal services rendered throughout the litigation which is proof of the true market rate because it is the rate in fact paid by Plaintiff.

(Pl.'s Reply Br. at 4 n.1).

It is well established that attorney fees under § 1988 are to be based on "market rates for the services rendered." *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Thus, the Sixth Circuit "used the 'community market rule' to calculate a reasonable billing rate." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020). "Under that rule, the billing rate 'should not exceed what is necessary to encourage *competent lawyers within the relevant community* to undertake legal representation.'" *Linneman, supra* (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007)) (emphasis added). The Sixth Circuit "has made clear that lawyers are entitled to only 'reasonable' fees and that 'such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.'" *Id.* That is because "some clients would be happy to pay above-market rates – especially if they thought it would secure them the highest level of representation." *Linneman, supra*, at 631.

In *Linneman*, the Sixth Circuit found it an abuse of discretion for the district to have awarded attorneys "rates of around $500 per hour" in a class action, but did not determine what a reasonable hourly rate would be, instead remanding for further proceedings in the district court.

"The burden is on the lawyer seeking fees," here Mr. Nacht, to submit evidence to show that the requested rate is reasonable. *Linneman,* 970 F.3d at 630.

The Court concludes that he has not done so. Just because Seals agreed to pay him $525 per hour, and that he actually paid such rates during a portion of the litigation, does not establish that is a reasonable rate in this local market for competent counsel.

The Retirement System had competent counsel, yet it paid its lawyers $200 to $225 per hour. (Def.'s Br. at 9).

The Court rejects Mr. Nacht's argument that his rate is established as reasonable because his client agreed to pay it. The Court concludes the rate is excessive, particularly in light of the Sixth Circuit's ruling that $500 per hour was so excessive in a *class action* that it amounted to an abuse of discretion. This Court concludes that $350 per hour, the median for civil rights work in the Survey, is a reasonable rate. Reducing the rate to $350 per hour results in Mr. Nacht's fees being reduced from $114,066.75 (217.27 x $525) to $76,044.50 (217.27 x $350), for a reduction of $38,022.25.

## 2.    Number Of Hours Reasonably Incurred In This Case

Next, the Retirement System asserts that the total number of hours billed in this case is unreasonable.   It makes several arguments in this regard.

### i.    Hours Billed On Summary Judgment Response

The Retirement System first objects that Seals' firm expended more than 100 hours in responding to summary judgment briefing. (Def.'s Br. at 10). It contends that "billing entries [for this work] are vague (e.g., 'work on Summary Judgment response')" and it is therefore difficult to determine the "reasonableness and efficiency" of the work performed. (*Id*.). The

Retirement System does not offer what it believes would have been a reasonable number of hours for this work.

The Court rejects this challenge. Seals asserted, and Judge Cleland agreed, that the summary issues were so intertwined that a combined, over-sized, response to both summary judgment motions was warranted. That forty-two page response brief addressed complex factual and legal issues and, combined with its exhibits, the filing spanned nearly a hundred pages. The work for such a motion includes review of the opposing briefs, conducting legal research, review of the record evidence in the case (including numerous deposition transcripts), and the actual drafting (and editing) of the response brief. The hours billed for this work does not strike this Court as excessive.

### ii. Hours Billed For Motions That Were Unnecessary Or Were Not Actually Filed.

The Retirement System also asserts that "Mr. Seals' law firm billed numerous hours relating to motions that were unnecessary, unreasonable, and never filed." (Def.'s Br. at 10). In support of this challenge, it asserts that firm "expended at least 26 billable hours researching and preparing a 'motion to disqualify', which was never filed" and that "Mr. Seals' law firm expended over 10 billable hours preparing one or more motions to compel, which were never filed." (Def.'s Br. at 10). The Court rejects this challenge.

That a motion ended up not being filed does not mean that the hours incurred in drafting it were not reasonably incurred at the time. For example, it is not unusual for a party to draft a motion to compel when requested discovery is not provided by the due date, and the other party won't commit to a date for production, only to have the late discovery provided after the motion is drafted but before it is filed or heard by the Court.

11

It was also not unreasonable for Plaintiff's counsel to have drafted a motion seeking to disqualify Mr. Abb as serving as trial counsel, as the Retirement System was stating that it also intended to call him as a witness at trial.

### iii.   Support / Documentation For Requested Work Performed

The Retirement System also objects to the hours incurred on the basis that there is inadequate support or documentation for the requested work performed.  It argues that the firm's "billing entries are vague" and it is therefore "difficult to determine the reasonableness or efficiency of the work performed" in the case.  (Def.'s Br. at 10-11).

The Retirement System asserts that the firm's records are deficient in the following regards:

1.   Block billing;

2.   Vague, non-descriptive billing entries (*e.g.*, "Trial prep" and "Emails with team");

3.   Attorneys billing for clerical work (*e.g.*, attorney "AMG" billing for "Emails concerning binders for MSjs" [*sic*] and "Emails with [paralegal] concerning hearing binder", and to "Organize file");

4.   Attorneys billing for intra-office travel time (*e.g.*, attorney "AMG" billing for "Drive to/from Ann Arbor office for trial prep"); and

5.   Paralegals and/or law clerks – particularly "KAP" – billing for nearly every email and/or phone call from the beginning of the case and through trial, without any support for the necessity or reasonableness of these billings.

(Def.'s Br. at 11).  It does not, however, quantify the hours it contends were unreasonably incurred as to any of the specific items, such as items 3, 4, and 5.

The Retirement System asserts that the Court should reduce the number of hours due to these deficiencies and requests "an appropriate discount."  (Def.'s Br. at 12).  It directs the Court to a Sixth Circuit decision, wherein a district court's 25% overall reduction for excessive and

12

block billing was affirmed by the Sixth Circuit.  (*Id.*) (citing *Auto Alliance Int'l v. U.S. Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005) and a district court decision wherein the court (Judge Patrick Duggan) reduce attorney fees by 10% due to vague billing records and block billing – *Gratz v. Bollinger*, 353 F.Supp.2d 929, 939 (E.D. Mich. 2005).

The Court rejects this challenge.  While there are some vague entries in the billing records, the fact that the Retirement System does not have to pay attorney fees for any of the work performed from the onset of the case until Mr. Nacht's firm replaced Plaintiff's prior attorneys on April 29, 2021 (which includes drafting of the original complaint, the Amended Complaint, responses to motions to dismiss and motion for reconsideration, etc.), more than offsets any amount that the Court would be inclined to deduct for such deficiencies.

### 3.    Consideration Of The *Johnson* Factors

In *Echols v. Express Auto, Inc.*, 857 F. App'x 224,226-27 (6th Cir. 2021), the Sixth Circuit explained that, after the lodestar calculation, the district court "has the discretion" to adjust the amount up or down based on the *Johnson* factors.  But it has also acknowledged that many of the *Johnson* factors are subsumed within the lodestar calculation.  *Murphy v. Vaive Wood Products Co.,* 802 F. App'x 930, 937 (6th Cir. 2020).

Here, Plaintiff's motion and opening brief[2] do not ask the Court for an increase to its requested attorney fees based on any *Johnson* factors.

The Retirement System, however, argues that consideration of some *Johnson* factors warrant a decrease.  These arguments are not persuasive.

---

[2]Plaintiff's Reply Brief asserts, for the first time, that various *Johnson* factors "support an upward modification."  The Court will not entertain an argument raised for the first time in a reply brief.

It contends that the results Plaintiff obtained in this case were "modest in comparison" to what he sought. Plaintiff received a jury verdict in the amount of $180,000.00. Although Plaintiff was not awarded punitive damages, that cannot be held against Plaintiff because this Court ruled that punitive damages were not available as a matter of law. The Court will not reduce the award based upon the amount of the jury verdict rendered against the Retirement System.

The Retirement System also asserts that Plaintiff's "total fee award should be reduced by at least 50%" because no legal specialization or expertise was necessary to prosecute this "simple First Amendment retaliation claim." (Def.'s Br. at 14). The Court declines to decrease the fee award based on such arguments.

### B.    Request For Costs Under Fed. R. Civ. P. 54(d)(1)

Plaintiff also contends that he is entitled to recover costs, in addition to his attorneys' fees, under Fed. R. Civ. P. 54(d)(1). As to costs, Plaintiff's brief states:

> Fed. R. Civ. P. 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Plaintiff is filing contemporaneously with this motion a Bill of Costs in the amount of $4,557.50. In addition to the expenses itemized on the Bill of Cost, Plaintiff incurred non-billable expenses totaling $1,786.22 which are set forth in the Invoices for Professional Services. See Exhibit A and B. Plaintiff is entitled to recover both taxable and non-taxable costs, with interest accruing at a rate of 5.46% per day as discussed in the next section.

(Pl.'s Br., ECF No. 144, at PageID.4342).

Plaintiff's motion indicates that he is only asking this Court to award him "non-taxable costs in the amount of $1,636.22." (Pl.'s Br. at PageID.4343). The other costs are being sought in a Bill of Costs submitted to the Clerk of the Court.

### 1.     Costs Taxed

Local Rule 54.1 governs "Taxation of Costs" and provides that a "party seeking costs must file a bill of costs" with a specified period of time and that "[t]he clerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the Court's website."

The docket reflects that Plaintiff filed a Bill of Costs, seeking $4,557.50 in costs from the Clerk of the Court. $400.00 was sought for the filing fee and the remainder consisted of court reporter fees for deposition transcripts. The docket reflects that only $400.00 in costs were taxed by the Clerk of the Court. The Clerk of the Court included the following explanation for the costs that were denied:

> <u>Costs Denied</u>:
> Court Reporter Fees: $4,557.50        Court reporter fees are denied as the bill of costs fails to document how the corresponding deposition transcripts were used by the prevailing plaintiff. (*See* Bill of Costs Handbook, Section II C, page 3.)

(ECF No. 147 at PageID.4477).

That Taxed Bill of Costs states, consistent with Fed. R. Civ. P. 54(d)1), that "counsel for either side may, within seven (7) days, file motions to review the clerk's action." (*Id*. at PageID.4476); Fed. R. Civ. P. 54(d)(1) (Providing that the clerk may tax costs and "[o]n motion served within the next 7 days, the court may review the clerk's action.").

Plaintiff did not file a motion asking this Court to review the requested costs disallowed by the Clerk of the Court on January 22, 2024 and neither Plaintiff's motion (filed two days before his Bill of Costs) nor his reply brief (filed after Clerk's action) address the costs of the

court reporter fees for deposition transcripts or explain why they should have been allowed.  As such, those disallowed costs are not before this Court.

### 2.      Non-Billable Expenses

In addition to the costs he was seeking from the Clerk of Court in his Bill of Costs, Plaintiff's motion asks this Court to award him $1,786.22 in non-billable expenses.  That amount appears to consist of "legal research access fees, late cancellation fees for the deposition of Thomas Yee and Bernard Youngblood, and parking fees on the day of trial."  (*See* ECF No. 144-3 at PageID.4361-62),

Although Defendant filed a brief opposing Plaintiff's motion, the response brief does not address or oppose Plaintiff's request for these costs.  Plaintiff's reply brief notes this failure to oppose the request pertaining to these costs.  (Pl.'s Reply Br., ECF No. 152 at PageID.4535) (Defendant "failed to object to the costs requested or the interest rate sought.").  Accordingly, the Court grants Plaintiff's unopposed request for $1,786.22 in non-billable expenses.

### C.      Request For Interest Under 28 U.S.C. § 1961

The last thing requested in Plaintiff's motion is that be awarded interest, at a rate of 5.46%.  As to this request, his motion states:

> Finally, 28 U.S.C. § 1961(a) provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." The statute provides that interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors for the Federal Reserve System, for the calendar week preceding the date of the judgment. Additionally, 28 U.S.C. § 1961(b) provides that interest shall be computed daily to the date of payment and shall be compounded annually.
> In this case, the relevant rate is 5.46%. Board of Governors of the Federal Reserve System's Data Download Program attached as Exhibit E. The Sixth Circuit has held that an award of attorney fees accrues interest, pursuant to 28 U.S.C § 1961(a), "from date of judgment that unconditionally entitled prevailing

party to reasonable attorney fees, rather than from date of judgment which quantified that fee award." *Motley v. Metro Man I, citing Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 494 (6th Cir. 2001) (Keith, J.) and *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 587 (6th Cir. 2002). An award of post-judgment interest at a rate of 5.46% from the date of entry of judgment until the award is paid in full is supported and respectfully requested.

(Pl.'s Br. at PageID.4353).

Defendant's response to Plaintiff's motion does not address Plaintiff's request for interest at all.  Plaintiff's reply brief notes this failure to oppose the request pertaining to interest.  (Pl.'s Reply Br., ECF No. 152 at PageID.4535)(Defendant "failed to object to the costs requested or the interest rate sought.").  Accordingly, the Court shall grant Plaintiff's unopposed request for interest.

## II.     The Retirement System's Motion To Stay

Following the jury verdict, the Retirement System filed a Notice of Appeal and an appeal is currently pending in the United States Court of Appeals for the Sixth Circuit.

Rule 62 of the Federal Rules of Civil Procedure governs stays of proceedings to enforce a judgment.  Rule 62(a) provides for an automatic stay on the execution of a judgment "for 30 days after its entry, unless the court orders otherwise."  Fed. R. Civ. P. 62(a).  After that, a party can obtain a stay of execution on a money judgment in two ways.

First, the rule provides a party who posts a satisfactory supersedeas bond with a stay as of right:

(b) Stay by Bond or Other Security.  At any time after judgment is entered, a party may obtain a stay by providing a bond or other security.  The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

Fed. R. Civ. P. 62(b).  This rule guarantees that "a party who file a satisfactory supersedeas bond

[will receive] a stay of a money judgment as a matter of right." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). "Although the Rule does not 'precisely define the amount and conditions of a supersedeas bond,' it generally equals the entire judgment.'" *Kidis v. Reid*, Case No. 19-1673, slip. op. at 1 (6th Cir. Jan. 6, 2020) (quoting *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1191 (5th Cir. 1979)); *see also Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (Explaining that district courts "almost always" require a full supersedeas bond).

The Sixth Circuit has explained, however, that Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay. It speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." *Arban,* 345 F.3d at 408.

When a party seeks such a discretionary stay, that party "bears the burden of showing that the circumstances justify" an exercise of the court's discretion. *Nken v. Holder,* 556 U.S. 418, 433-34 (2009). This kind of a stay "is not a matter of right, even if irreparable injury might otherwise result." *Id*. Rather, it is "an exercise of discretion," and the propriety of such a stay depends on the circumstance of the particular case. *Id*. In considering a request for a discretionary stay, a district court considers and balances four factors: 1) whether the movant "has made a strong showing that [it] is likely to succeed on the merits" of the appeal; 2) whether the movant "will be irreparably injured absent a stay,: 3) whether issuance of a stay will "substantially injure" other interested parties; and 4) "where the public interest lies." *Id*. at 434.

As to the second factor, "potential monetary damage does not constitute irreparable harm. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in

the absence of a stay, are not enough." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (quoting *Sampson v. v. Murray*, 415 U.S. 61, 90 (1974)).

The Retirement System's Motion for Stay states that it "requests a stay pending appeal pursuant to Fed. R. Civ. P. 62(b)." (Def.'s Br. at 1). That is the subsection of Rule 62 that governs stays as of right upon the posting of a bond. From the body of the Retirement System's opening brief, however, that discusses the factors for a discretionary stay, it appears to be asking this Court for a discretionary stay (ie., one issued without the posting of a bond). But the Retirement System's Reply Brief also addresses the posting of bond, stating "if the Court is inclined to deny this motion, the Retirement System offers to post appeal bond." (Def.'s Reply Br. at 1).

Accordingly, the Court first considers whether to grant a discretionary stay (without the posting of a bond). The Court denies that request.

The first factor considered is whether the Retirement System "has made a strong showing" that it is likely to succeed on the merits of its appeal. As to this factor, the Retirement System continues to make the same arguments that have repeatedly been made and rejected during the course of this litigation (ie., that Judge Cleland erred in making his rulings during dispositive motion practice, that this Court erred in giving the jury a causation instruction based upon a recent published decision by the Sixth Circuit, etc.). The Court finds that the Retirement System has not made the required showing, for the reasons made in the numerous prior opinion and orders issued throughout this case.

And more importantly, the Retirement System has not established that it will be irreparably injured absent a stay. It asserts that, absent a stay, it will be unable to earn an

19

investment income on the $180,000.00 at issue during the course of the appeal.  That is simply "not enough" to establish the requisite irreparable harm.  *Sampson, supra.*

Given the Court's ruling denying the Retirement System's request for a discretionary stay, the Court next considers the statement in its reply brief that it is offering to post a bond.  As noted above, the Retirement System may obtain a stay as of right under Fed. R. Civ. P. 62(b) if it posts an appropriate bond.  The amount of the bond generally equals the total amount of the judgment.  This Court approves a supersedeas bond in the amount of the full judgment to be issued (ie., the jury's damage award plus the attorney fees and costs to be awarded).

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Attorney Fees is GRANTED IN PART AND DENIED IN PART.  The Court ORDERS that Plaintiff is entitled to: 1) attorney and professional fees in the total amount of $281,522.50; 2) $1,786.22 in non-billable expense costs; and 3) interest on the judgment to be issued at the rate of 5.46%.  The Court ORDERS the parties to meet and confer and, within fourteen (14) days of this Opinion and Order, to submit an agreed-upon final judgment that reflects the Court's rulings.

IT IS FURTHER ORDERED that Defendant's Motion for Stay is GRANTED IN PART AND DENIED IN PART. The motion is DENIED to the extent that Defendant seeks a discretionary stay.  The motion is GRANTED to the extent that the Court APPROVES a supersedeas bond in the full amount of the final Judgment to be issued.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 20, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 20, 2024, by electronic and/or ordinary mail.

s/Jennifer McCoy_____
Case Manager